UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Kevin M. Gipson, | Case No. 2:23-cv-00996-CDS-EJY |
| Plaintiff | Order Granting the Respondents' Motion to Dismiss and Dismissing the Petition as Untimely, Granting Motions to Seal, and Granting Unopposed Motion to Extend Time |
| v. | |
| Warden Najara, et al., | |
| Defendants | [ECF Nos. 33, 36, 46, 49] |

This habeas action is brought by petitioner Kevin M. Gipson under 28 U.S.C. § 2254. The respondents move to dismiss the first amended petition as untimely, unexhausted, and procedurally barred. Also pending is the respondents' motion to seal (ECF No. 33), Gipson's motion to seal (ECF No. 45), and an unopposed motion to extend time (ECF No. 49). For the reasons explained below, I find that equitable tolling is not warranted so I grant the respondents' motion to dismiss. I also grant the motions to seal and the unopposed motion to extend time.

I.      Background

Gipson challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County, Nevada. *See* First am. pet., ECF No. 28. He entered a guilty plea for murder with use of a deadly weapon. On March 13, 2012, the state court entered a judgment of conviction and sentenced him to life with the possibility of parole after 20 years. ECF No. 31-10.

Gipson did not file a timely appeal to the Nevada appellate courts. In September 2012, he filed a pro per motion to withdraw plea, which the state district court denied. ECF Nos. 31-11, 31-14. In June 2014, Gipson filed a state petition for writ of habeas corpus seeking post-conviction relief. Although the state habeas petition was untimely, the state district court concluded Gipson demonstrated good cause to overcome the procedural bars. ECF No. 31-35.

The state district court nonetheless denied his state habeas petition on the merits following an evidentiary hearing. ECF No. 31-47.

The Nevada Court of Appeals found the district court erred by denying the State's motion to dismiss Gipson's state habeas petition as untimely. The Nevada Court of Appeals found that Gipson failed to demonstrate good cause and nonetheless affirmed the denial of relief. ECF No. 32-15.

In February 2017, Gipson filed a second state habeas petition. ECF No. 32-17. The Nevada Court of Appeals affirmed the state court's denial of relief finding he filed his state petition nearly five years after the state court entered the judgment of conviction. ECF No. 32-30. In April 2022, Gipson filed a third state habeas petition. ECF No. 32-33. The state district court found the third habeas petition untimely and Gipson did not file an appeal. ECF No. 32-52.

In June 2023, Gipson filed his federal habeas petition. ECF No. 1-1. Following appointment of counsel, he filed his first amended petition. ECF No. 28. The respondents move to dismiss the first amended petition as untimely, unexhausted, and procedurally barred. ECF No. 36. Gipson asserts that he is entitled to equitable tolling based on his severe mental illness, and other factors outside of his control, such as lack of access to resources due to COVID-19 restrictions and prison lockdowns. *Id.*

II.    Discussion

   A.  Timeliness

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitation period for state prisoners to file a federal habeas petition pursuant to 28 U.S.C. § 2254. The AEDPA limitations period is tolled while a "properly filed" state post-conviction proceeding, or other collateral review is pending. 28 U.S.C. § 2244(d)(2). No statutory tolling is permitted for the time that a federal habeas petition is pending. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Here, because he did not file a timely notice of appeal, Gipson's conviction became final when the time expired for filing a notice of appeal with the Nevada appellate courts on April 12,

2012. Gipson filed a pro per motion to withdraw his plea on September 5, 2012, and the state district court denied the motion on September 27, 2012. I assume, without deciding, that the limitations period was tolled during the pendency of Gipson's motion to withdraw plea, from September 5, 2012, until October 27, 2012.

As such, the limitations period would have started to run again on October 28, 2012. Before the motion to withdraw plea was filed, 145 days of the federal limitations period elapsed. Accordingly, once the limitations period began to run again, it expired 220 days later on June 4, 2013, absent another basis for tolling or delayed accrual.

The parties agree that Gipson filed his federal petition after the one-year limitation period under AEDPA expired. Gipson filed his pro se federal petition in June 2023, ten years after the AEDPA one-year statute of limitations period expired. He, however, argues that he can overcome any timeliness bars because he is entitled to equitable tolling.

### B.   Equitable Tolling

The one-year period of limitation of 28 U.S.C. § 2244(d)(1) is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling does not stop the limitations clock the way that statutory tolling does.

Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). Gipson "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time for filing his claim in federal court." *Smith v. Davis* 953 F.3d 582, 599 (9th Cir. 2020).

A serious mental impairment can constitute an extraordinary circumstance. Gipson must prove that he "was unable rationally or factually to personally understand the need to timely file" or that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." *Bills v. Clark*, 628 F.3d 1092, 1099 (9th Cir. 2010). He must show diligence in pursuing his claims "to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Id.* at 1099–1100 (citations omitted); *see also Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) ("[w]here a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled"). I must consider whether the mental impairment made it impossible for Gipson to timely file a habeas petition on his own. *Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012).

Gipson argues that equitable tolling is warranted because of his long history of mental illness, including bipolar disorder and paranoid schizophrenia. Gipson included a declaration by his mother. ECF No. 44-1. His mother stated that bipolar disorder and schizophrenia run on Gipson's father's side of the family. *Id.* When Gipson was twelve, he began to exhibit behaviors indicative of symptoms of bipolar disorder and schizophrenia, such as talking gibberish to himself and trying to communicate using imaginary languages. *Id.* His mother provided that Gipson was diagnosed with bipolar disorder and schizophrenia in 2009. *Id.* She personally took Gipson to the hospital on multiple occasions when Gipson would have episodes and his doctor provided that Gipson needed to stay on his medications to avoid episodes in the future. *Id.*

As provided by Gipson's mother in her declaration, in February 2010, Gipson went to his mother's home with his girlfriend. *Id.* His girlfriend had to work and asked his mother to watch Gipson because he was having an episode. *Id.* She stated that Gipson would stare at the wall for long periods of time. *Id.* His mother stated that it was obvious to her that he was not taking his medication. *Id.*

4

On February 13, 2009, Gipson was admitted to North Vista Hospital for a "Legal 2000," which is an involuntary 72-hour mental health hold for individuals who pose a substantial likelihood of serious harm to themselves or others. ECF No. 46-1. Gipson was transferred to Southern Nevada Adult Mental Health Services ("SNAMHS"). ECF No. 46-2. A psychiatric evaluation performed at SNAMHS on February 17, 2009, provides that Gipson was experiencing delusions and hallucinations. *Id.* at 9, 37.

After Gipson was discharged from SNAMHS, he was admitted to UMC Hospital on February 22, 2009, for another "Legal 2000." ECF No. 46-3 at 26. Gipson was having delusions, was being hyper religious, was aggressive, and threatening his family members. *Id.* An evaluation performed on February 23, 2009, provides that Gipson had no paranoid ideation and no delusions. *Id.* at 34. The evaluation further provides that Gipson's girlfriend of six years reported that much of Gipson's paranoid behavior begins after he smoked marijuana. *Id.*

On March 9, 2009, after Gipson was released from UMC Hospital, he went to SNAMHS to refill his medication, but he could not receive services because his insurance was not accepted by the provider. ECF No. 46-2 at 33. The SNAMHS records provide that during this visit, Gipson denies former delusions, and states that "he is doing well at this time." *Id.*

The Clark County Detention Center ("CCDC") and Nevada Department of Corrections ("NDOC") records reflect that Gipson suffered from metal health issues while in custody. From March 2010 to October 2010, Gipson sent multiple requests for medication stating that he was having difficulty sleeping and suffering from anxiety attacks. ECF No. 46-4 at 18–26. Specifically, on March 31, 2010, he requested Invega "for mental illness" and requested that CCDC review his records so he could have his "psych meds." *Id.* at 26.

Gipson asserts that after arriving at NDOC, he continued to suffer from psychiatric distress. He contends that from 2012 to the end of 2013, he suffered from auditory hallucinations, racing thoughts, nightmares, and voices telling him to commit suicide. ECF No. 46-5 at 21–22. However, the NDOC records also indicate that he received monthly mental health status checks

and on June 13, 2012, Gipson had no reports of auditory hallucinations, he exhibited some mental impairment, and mild mental decompensation. *Id.* at 6. On July 7, 2012, Gipson had no reports of mental health impairments and that he was managing without difficulty. *Id.* at 4. Although Gipson exhibited "some mental impairment," there was "no evidence of mental decompensation." *Id.*

In addition, "according to [Gipson,] during the majority of his time in NDOC, he was kept in administrative segregation on high levels of anti-psychotic medication that made it difficult for him to concentrate." ECF No. 43 at 4. However, the NDOC records do not support a conclusion that Gipson was seriously mentally impaired for almost the entirety of the years that he has been in NDOC custody. *See generally* ECF No. 46-5. Despite being medicated, the record reflects that Gipson was able to communicate with mental health staff and request certain medication. ECF No. 46-6. In July of 2012, Gipson had no reports of mental health impairments and provided that he was managing without difficulty. ECF No. 46-5 at 4. Although Gipson exhibited "some mental impairment," there was "no evidence of mental decompensation." *Id.*

Gipson also asserts that during the COVID-19 pandemic, due to frequent lockdowns, and as recently as 2022, he had difficulty accessing the law library. In addition, Gipson suffered from severe arthritis that made it difficult for him to write for extended periods of time.

Even applying a flexible, totality-of-the-circumstances approach to evaluating Gipson's equitable tolling argument, in light of the particular circumstances of this case, there is no basis for equitable tolling. While the Court recognizes that it may be more challenging to prepare a federal habeas petition with pandemic-related restrictions, Gipson has not established that any pandemic-related circumstances actually prevented him from filing his petition by demonstrating a causal link between pandemic related impediments—such as limited access to the law library, law clerks, and copying machines—and his inability to file the federal petition. *See Spytsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). He does not explain how this asserted diminished access actually impeded his ability to file his federal petition, when the limitations period expired in

2013, long before the COVID-19 pandemic. Although he also asserts that he relied on the assistance of other inmates to file his petitions, "a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

With respect to equitable tolling based on mental impairment, Gipson has not shown that he could not rationally or factually understand the need to timely file a federal petition or that his mental state was such that he was unable to prepare and file a habeas petition. *Bills*, 628 F.3d at 1099. Instead, Gipson's records tend to reflect that although he suffered from mental illness, there were periods of time where he had no reports of mental impairments, that his mental illness was exacerbated by the use of marijuana, and that his condition appeared to improve with proper medication. *See generally* ECF No. 46-4, 46-5.

In addition, while he was in custody at NDOC, he was able to file multiple state habeas petitions. His pursuit of multiple state petitions during the relevant period undermines his argument that his alleged mental state stood in the way of timely filing his federal petition, *Holland*, 560 U.S. at 649, and instead indicates lack of diligence in pursuing federal relief. "The petitioner . . . always remains accountable for diligence in pursuing his or her rights." *Bills*, 628 F.3d at 1100. *See Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) ("[I]t cannot be that his mental impairment was so severe as to be the but-for cause of his delay" because, inter alia, petitioner "was able to file a state habeas petition in three different California venues … refut[ing] a claim of impairment so debilitating that one could not 'rationally or factually' understand the meaning of a deadline."); *accord, Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2006) (affirming district court's rejection of equitable tolling based on mental impairment on the ground that petitioner had filed state court petitions during the federal limitations period).

Similarly, although Gipson assets that he suffered from severe arthritis impacting his ability to write for long periods of time, he nonetheless was able to file multiple state habeas petitions. Other than broad assertions that his medical records indicate that Gipson suffered from

arthritis, Gipson does not elaborate on the extent of his medical condition and for what periods of time his medical condition affected his ability to write.

Gipson did not file a federal petition until June 2023, ten years after the expiration of the AEDPA limitation period. The record contradicts his assertion that he is entitled to equitable tolling. Gipson has not shown that the totality of the circumstances made it impossible for him to meet the filing deadline. Consequently, Gipson is not entitled to equitable tolling, so this his amended petition is untimely under the AEDPA. I therefore grant the respondent's motion to dismiss.

### C.  Motions to seal

The respondents seek leave to file under seal (ECF No. 33): Exhibit 57, the petitioner's Presentence Investigation Report ("PSI") (ECF No. 34-1), dated February 2, 2012. In addition, Gipson seeks leave to file his medical records under seal (ECF No. 45). Under Nevada law, the PSI is "confidential and must not be made a part of any public record." Nev. Rev. Stat. § 176.156(5). Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, I find that a compelling need to protect Gipson's safety, privacy, confidential medical records, and/or personal identifying information outweighs the public interest in open access to court records. Accordingly, the motions to seal are granted.

### D.  Motion to extend time

The respondents filed an unopposed motion to extend time to file their reply in support of their motion to dismiss. ECF No. 49. I find the request is made in good faith and not solely for the purpose of delay, and therefore good cause exists to grant the motion.

### E.  Certificate of appealability

A district court is required to issue or deny a certificate of appealability when it enters a final order adverse to a habeas petitioner, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Fed. § 2254 R. 11(a); 9th Cir. R. 22-1(a).

Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Where a district court denies relief on procedural grounds without reaching the underlying constitutional claim, the court applies a two-step inquiry to decide whether a certificate of appealability is appropriate. *Payton v. Davis*, 906 F.3d 812, 820 (9th Cir. 2018). A petitioner must show both that jurists of reason would find it debatable (1) " 'whether the petition states a valid claim of the denial of a constitutional right'," and (2) " 'whether the district court was correct in its procedural ruling'." *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (quoting *Slack*, 529 U.S. at 484). To meet the threshold inquiry, a petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *See Allen v. Ornoski*, 435 F.3d 946, 950–951 (9th Cir. 2006).

Applying this standard, I find that a certificate of appealability is unwarranted in this case. I therefore deny Gipson a certificate of appealability.

**III.    Conclusion**

IT IS HEREBY ORDERED that the respondents' motion to dismiss **[ECF No. 36] is granted**.

IT IS FURTHER ORDERED that petitioner Kevin M. Gipson's first amended petition for writ of habeas corpus **[ECF No. 28] is dismissed** as untimely.

IT IS FURTHER ORDERED that the respondents' motion to seal **[ECF No. 33] is granted**.

IT IS FURTHER ORDERED that the petitioner's motion to seal **[ECF No. 45] is granted**.

IT IS FURTHER ORDERED that the respondents' unopposed motion to extend time **[ECF No. 49] is granted nunc pro tunc**.

IT IS FURTHER ORDERED that a certificate of appealability is denied as reasonable jurists would not find the court's decision debatable or wrong.

The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

Dated:  January 30, 2026

_____
Cristina D. Silva
United States District Judge